UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
STUART COHEN,

                Plaintiff,                              **MEMORANDUM AND ORDER**
                                                                     12-CV-1932 (RRM)(RLM)

     - against -

THE CITY OF NEW YORK and THE NEW
YORK CITY DEPARTMENT OF
CORRECTION,

                Defendant.
----------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge

      Plaintiff Stuart Cohen brings this action against the City of New York and the New York City Department of Corrections, alleging a violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA") and the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"). Cohen alleges that the defendants' discriminated against him on the basis of his disability when the New York City Department of Corrections ("DOC"), his former employer, failed to accommodate him and brought disciplinary charges against him for excessive absences, which eventually led to his retirement. Presently before the Court is defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). For the reasons that follow, defendants' motion is GRANTED and Cohen's ADA and NYSHRL claims are DISMISSED.

## BACKGROUND[1]

Cohen was hired as a DOC corrections officer on July 2, 1987. (Compl. ¶ 15.) For over fourteen years, Cohen maintained a perfect attendance record, and was recognized by the DOC for his record. (*See id.* ¶¶ 15–16.) In October of 1995, Cohen was diagnosed with type 2 diabetes, but continued to reliably perform his job duties over the next decade. (*Id.* ¶ 19.) However, starting in late 2006, Cohen's health deteriorated and he suffered a series of medical emergencies that culminated in his retirement and the present dispute.

On October 19, 2006, Cohen fell into a diabetic coma in his home. (*Id.* ¶ 20.) He was discovered by a DOC colleague and taken to the hospital, where he remained for a day. (*See id.* ¶¶ 20–21.) Under DOC policy, a corrections officer who is hospitalized must obtain medical clearance from the DOC medical staff before returning to work. (*Id.* ¶ 22.) Cohen obtained the necessary clearance and returned to work on October 24, 2006. (*Id.* ¶ 23.)

However, on October 24, 2006, Cohen fell into another diabetic coma while working for the DOC. (*Id.* ¶ 24.) He was hospitalized until November 2, 2006, and received DOC medical clearance on November 14, 2006. (*Id.* ¶¶ 25–26.)

On March 27, 2007, while working for the DOC, Cohen was again taken to the hospital and placed in the cardiac care unit. (*Id.* ¶ 27.) There, Cohen was diagnosed with Bradycardia. (*Id.*) Cohen remained in the hospital until September 5, 2007, and obtained DOC medical clearance on October 4, 2007. (*Id.* ¶¶ 28–29.)

It was at this point that Cohen alleges that he began to be subjected to discriminatory treatment by reason of his disability. (*See id.* ¶ 30.) Warden Mulvey, Cohen's supervisor, told

---

[1] These facts, which are assumed to be true for the purposes of this motion, are taken from the complaint filed April 20, 2012 (Compl. (Doc. No. 1)), and documents incorporated by reference therein. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (finding that courts may consider on a motion to dismiss any "written instrument attached to [the complaint] as an exhibit," any "statements or documents incorporated in it by reference" or any document "integral to the complaint" because it "relies heavily upon its terms and effect" (quotation marks omitted)).

Cohen that she wanted to place Cohen on a rotating shift and in November 2007 designated Cohen as a chronically absent officer. (*Id*. ¶¶ 31–32.) Cohen alleges that, under DOC policy, absences due to hospitalization are not supposed to count towards the chronic absentee designation, and that "numerous other individuals who were hospitalized for an extended period" were not designated as chronic absentees like Cohen was. (*Id*. ¶¶ 33–34.)

On November 27, 2007, Cohen fell into a diabetic coma while driving, leading to an accident where his vehicle flipped over. (*Id*. ¶ 35.) On November 30, 2007, DOC Chief Valerie Oliver, the officer in charge of the DOC's personnel division, visited Cohen in the hospital. (*Id*. ¶ 36.) There, Oliver assured Cohen that no disciplinary actions would be taken against him and that his post and tour were secure. (*Id*. ¶ 38.) However, upon his release from the hospital on December 11, 2007, Cohen tried to contact Oliver, but all of his calls went unreturned. (*See id*. ¶¶ 39–42.) Following this incident, Cohen did not receive DOC medical clearance until April 1, 2008, when he was placed on medically monitored status. (*Id*. ¶¶ 43–45.)

On March 7, 2008, the DOC issued charges and specifications against Cohen, alleging excessive use of sick leave and failure to provide adequate medical documentation for his absences. (*Id*. ¶ 47.) The charges were brought pursuant to a DOC policy that states that an officer who reports sick for forty or more days within a twelve month period may be subject to termination, a policy which Cohen alleges is seldom used by the DOC. (*Id*. ¶ 49, 51.) Cohen further alleges that other non-disabled corrections officers who were absent for periods longer than forty days either were not subject to disciplinary action under this policy or had those charges dropped. (*Id*. ¶ 52–53.) After receiving the charges, Cohen tried to contact Oliver several times, but his calls went unreturned. (*Id*. ¶ 55.)

3

Cohen alleges that he signed papers to retire from the DOC on May 29, 2008, but that the disciplinary hearing on the charges was scheduled and the pending charges were not dropped. (*Id*. ¶ 63–66.) When Cohen arrived for his hearing, he was advised that if he did not sign a final retirement form, the disciplinary case could take a year and that during that time he would be off the payroll and would not receive any pension or medical benefits. (*Id*. ¶ 68.) On July 16, 2008, fearing the loss of his pension and health benefits, Cohen signed a Negotiated Plea Agreement for the Settlement of Disciplinary Matters (the "Settlement Agreement"), wherein he agreed to retire from his position by November 20, 2008. (*See id*. ¶ 69; Ex. C (Doc. No. 9-3) at 4 (ECF Pagination).) Cohen officially retired from the DOC on November 16, 2008. (*See* SHDR Compl., Ex. A (Doc. No. 9-1) at 3, 12 (ECF Pagination).)

On September 3, 2009, Cohen filed a verified complaint with the New York State Division of Human Rights ("SDHR"), charging that the DOC discriminated against him on the basis of his diabetes. (Compl. ¶ 7–8.) On December 29, 2011, the SDHR issued a Determination and Order after Investigation, wherein it determined that there was no probable cause to believe that the DOC engaged in discrimination. (*Id*. ¶ 9; Ex. B (Doc. No. 9-2).) On January 24, 2012, the U.S. Equal Employment Opportunity Commission issued Cohen a right to sue letter. (Compl. ¶ 12.) Cohen filed his complaint in this Court on April 20, 2012.

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the court to examine the legal, rather than factual, sufficiency of a complaint. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). As required by Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain

4

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a 12(b)(6) motion must "take[ ] factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor." *Harris*, 572 F.3d at 71 (citation omitted). A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

## DISCUSSION

### A. ADA Claims

#### 1. Cohen's ADA Claims are Untimely

In New York, an ADA claim is time-barred unless the plaintiff files a charge of discrimination within 300 days of the alleged unlawful employment practice. *See Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325–28 (2d Cir. 1999); *Harris v. City of New York*, 186

F.3d 243, 247 (2d Cir. 1999); *Valtchev v. City of New York*, 400 F. App'x 586, 588 (2d Cir. 2010). Here, Cohen filed his charge of discrimination with the SDHR on September 3, 2009. Therefore, only incidents occurring on or after November 7, 2008 are timely. The only incident alleged in the complaint that occurred after this date, and within the 300 days of the filing of the SDHR complaint, was the effective date of Cohen's retirement on November 16, 2008.

Defendants argue that, notwithstanding the fact that Cohen's date of retirement occurred within 300 days of the filing of the charge of discrimination, Cohen's entire complaint is time-barred. Defendants contend that the date of Cohen's retirement is irrelevant in the context of his ADA claim because it was merely the ineluctable result of his earlier decision to retire. (*See* Def's Br. (Doc. No. 10) at 11–12 (ECF Pagination).) Rather, defendants argue, July 16, 2008, the date Cohen agreed to retire, was the point in time in which his ADA claim accrued. (*Id.*) In response, Cohen argues that his claims could not have accrued until November 16, 2008, the official date of his retirement, since the disciplinary hearing process was pending and the threat of termination persisted until that time. (*See* Pl's Br. (Doc. No. 12) at 14–15 (ECF Pagination).) Furthermore, Cohen contends that DOC never explicitly responded to his requests for accommodations, implying that DOC's actions could be reversed until that time. (*Id.*)

The Court agrees with defendants. As defendants correctly observe, the triggering event for the limitations period is when the defendant allegedly engaged in discriminatory conduct, not when the plaintiff was subjected to the ultimate consequences of that purported discrimination. *See Liles v. NYC Dep't of Educ.*, 516 F. Supp. 2d 297, 309 (S.D.N.Y. 2007) (citing *Del State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)); *see also Pearson v. Bd. of Educ.*, 499 F. Supp. 2d 575, 590 (S.D.N.Y. 2007) ("The 300 day period starts to run when the claimant receives notice of the allegedly discriminatory conduct, not when the allegedly discriminatory decision takes effect.");

6

*Josey v. NYC Police Dep't*, No. 07-cv-6420, 2008 WL 2676620, at *5–6 (S.D.N.Y. Jul. 7, 2008). This principle was articulated by the Supreme Court in *Delaware State College v. Ricks*, 449 U.S. 250 (1980).

In *Ricks*, the plaintiff, a professor, was denied tenure at the institution at which he was teaching. *Id*. at 252. The plaintiff filed an internal grievance challenging the tenure decision and, while that grievance was pending, accepted a one year terminal contract that would allow him to remain employed for a year before he was terminated. *Id*. at 252–54. His grievance was eventually denied and his employment ended, which led him to sue in federal court. *Id*. at 254. The question before the court was whether the plaintiff had timely filed his employment discrimination claim. *Id.* at 252.

In determining the date that the claim accrued, the court noted that "mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." *Id*. at 257. Instead, "[t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." *Id*. at 258 (citation omitted). In *Ricks*, the court determined that the alleged discrimination occurred when "the tenure decision was made and communicated to [the plaintiff] . . . even though one of the effects of the denial of tenure – the eventual loss of a teaching position – did not occur until later." *Id*.

The court specifically rejected the argument that the claim accrued when the grievance process ended. It explained that the fact that the employer entertained a grievance did not mean that the tenure decision was tentative since the grievance process was "not an opportunity to influence [the tenure] decision before it is made" and noted that "careful procedures to assure

7

fairness in the tenure decision should not obscure the principle that limitations periods normally commence when the employer's decision is made." *Id*. at 261.

The principle in *Ricks* applies to disability discrimination claims under the ADA. In *Josey v. New York City Police Department*, No. 07-cv-6420, 2008 WL 2676620 (S.D.N.Y. July 7, 2008), a New York City police officer who was seriously injured during an off-duty incident requested an accommodation to return to full duty and a certain level of disability benefits. *Id*. at *2. The defendants denied both requests. *Id*. at *2–3. Shortly thereafter, the plaintiff filed an Article 78 action in New York state court challenging the denial of disability benefits. *Id*. at *3. The defendant also officially retired from the police force. *Id*. The plaintiff eventually filed suit in federal court claiming, *inter alia*, that the defendants had violated the ADA. *Id*. The defendants moved for summary judgment, arguing that the allegedly discriminatory acts were time barred. *Id*. at *4. In response, the plaintiff argued that "he suffered no adverse effect from [the allegedly discriminatory] decisions until he was forced to retire" and thus "the time for filing of his EEOC charge should begin to run at his retirement." *Id*.

Relying on *Ricks*, the court rejected plaintiff's argument and granted summary judgment. The court noted that plaintiff's argument was that "the date of his retirement was when he experienced the effect of defendants' discriminatory actions" but, as established in *Ricks*, "the date of his retirement is irrelevant for purposes of determining when the 300-day filing deadline began to run." *Id*. at *6. The court also noted that the initiation of the Article 78 proceeding was irrelevant since it was "solely a remedy for discrimination that [had] already occurred, and [did] not alter the dates on which the allegedly discriminatory acts took place." *Id*.

Thus, like the claims in *Ricks* and *Josey*, Cohen's claims here are untimely. In his complaint, Cohen describes a number of medical emergencies that he suffered from late 2006

8

through late 2007 that required him to spend a significant amount of time in the hospital and away from work. Although he alleges that he sought reasonable accommodations for his purported disability, the DOC offered no accommodations and instead charged Cohen with excessive absences and instituted a disciplinary process against him in March 2008. Fearing the loss of his pension and health benefits, Cohen voluntarily agreed to forgo the disciplinary process and to retire from the DOC by signing the Settlement Agreement on July 16, 2008. At the latest, the moment Cohen signed that Settlement Agreement under purported pressure from the DOC, the employment decision was made and his ADA claim accrued.[2] The day that his retirement became official is irrelevant as it was merely the date on which he experienced the effects of the DOC's allegedly discriminatory conduct. *See Josey*, 2008 WL 2676620, at *6 (finding that "the date of [plaintiff's] retirement is irrelevant for purposes of determining when the 300-day filing deadline began to run"); *Liles*, 516 F. Supp. 2d at 313 (finding that a termination letter was irrelevant to timeliness analysis as plaintiff was aware that he would be terminated the moment he lost his teaching certification).

---

[2] No other event renders Cohen's claims timely. Cohen makes no allegations that the DOC committed any discriminatory acts between the time in which he agreed to retire and the date on which his retirement became effective. Furthermore, Cohen does not suggest that he was treated differently from other DOC employees who agreed to retire in exchange for the dismissal of pending disciplinary charges. *See Ricks*, 449 U.S. at 258 (noting that in order for the limitations period to commence on the date of discharge following an alleged discriminatory denial of tenure, plaintiff would have had to show that that he "was treated differently from other unsuccessful tenure aspirants"). Cohen has also failed to show that the continuing violation exception to the timeliness requirement applies. In order to trigger the continuing violation doctrine, Cohen would have had to allege that the purported discriminatory acts were part of a continuing policy or pattern and practice of prohibited discrimination. *See Valtchev v. City of New York*, 400 F. App'x 586, 588–89 (2d. Cir. 2010). However, the acts described in the complaint were discrete acts and not continuing violations. *See, e.g., Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134–35 (2d Cir. 2003) ("[A]n employer's rejection of an employee's proposed accommodation for religious practices does not give rise to a continuing violation. Rather, the rejection is the sort of 'discrete act' that must be the subject of a complaint to the EEOC within 300 days."). Therefore, the continuing violation doctrine does not apply here.

Similarly, the fact that the disciplinary process that forced his retirement did not formally terminate until Cohen officially retired is also irrelevant.³ Cohen's retirement was a foregone conclusion the moment that the signed the Settlement Agreement. Like the grievance process in *Ricks* and the Article 78 proceeding in *Josey*, that the disciplinary process here may have nominally continued does not suggest that DOC's decision was in any way tentative. If anything, it shows that the DOC was resolute in wanting to terminate Cohen. The supposed "ongoing threat of termination" that this process represented and DOC's failure to respond to Cohen's alleged requests for accommodation only reinforce this conclusion. Simply put, "limitations periods normally commence when the employer's decision is made," *Ricks*, 449 U.S. at 261, and here that point in time was when Cohen agreed to retire. Thus, Cohen cannot rely on the disciplinary process to "give[] present effect to the past illegal act and therefore perpetuate[] the consequences of forbidden discrimination." *Ricks*, 449 U.S. at 258; *see also Josey*, 2008 WL 2676620, at *6.⁴

In short, the latest point in time that Cohen's ADA claim accrued was on July 16, 2008, when, in response to alleged pressure from the DOC, Cohen agreed to retire. This date preceded the date on which Cohen filed his charge with the SDHR – September 3, 2009 – by more than 300 days. Consequently, Cohen's ADA claims are untimely.

---

³ Defendants argue that the disciplinary process ended the moment the Settlement Agreement was signed. (Def.'s Reply (Doc. No. 13) at 12–13 (ECF Pagination).) Indeed, on its face, the Settlement Agreement appears to terminate the disciplinary process. However, construing the facts in favor of the plaintiff, the Court will assume that the disciplinary process continued after the Settlement Agreement was signed.

⁴ Cohen's reliance on *Angeles-Sanchez v. Alvarado*, 993 F.2d 1530 (1st Cir. 1993) (unpublished) and *Bruno v. Western Electric Company*, 829 F.2d 957 (10th Cir. 1987) is unavailing. In *Angeles-Sanchez*, the First Circuit found that in the context of a constructive discharge claim the plaintiff's letter of resignation, which was submitted after years of harassment and months of a protracted investigation by the employer, lacked finality since the plaintiff would have rescinded her resignation if the employer ended the hostile atmosphere. *Angeles-Sanchez*, 1993 WL 147472, at *3. Here, even if Cohen had properly pled a claim for constructive discharge, the effect of the settlement agreement was unequivocal and there was no opportunity for Cohen to rescind it once it was executed. In *Bruno*, the Tenth Circuit affirmed the district court's finding that the evidence was sufficient to show that a continuing violation existed. As previously discussed, Cohen has failed to plausibly plead that the continuing violation theory applies here.

10

### 2. Cohen's Tardiness Cannot be Excused

Failure to timely file a charge of discrimination is not a jurisdictional prerequisite and, like a statute of limitations, is subject to waiver, estoppel and equitable tolling. *See Zipes v. Trans World Airlines*, 455 U.S. 385, 393 (1982); *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000). Courts may consider whether these equitable doctrines apply, however they "are to be applied sparingly." *Morgan*, 536 U.S. at 113. Here, Cohen contends that the City "had a full and fair opportunity to raise a statute of limitations defense" before the SDHR, but failed to do so and therefore waived the statute of limitations defense. (Pl's Br. (Doc. No. 12) at 13.) The Court disagrees.

Courts that have addressed similar waiver arguments have taken one of two approaches. First, analogizing to cases involving employers who were federal agencies, such as *Bruce v. United States Department of Justice*, 314 F.3d 71 (2d Cir. 2002), and *Briones v. Runyon*, 101 F.3d 287 (2d Cir. 1996), some courts have held that a non-federal employer must take some affirmative action, like staking an explicit position on timeliness before the administrative agency, before it will be deemed to have waived a timeliness defense in federal court. *See Syrkin v. State Univ. of New York*, 04-CV-4336 (FB)(RML), 2005 WL 2387819, at *7–8 (E.D.N.Y. Sept. 29, 2005); *Mercado v. Ritz-Carlton San Juan Hotel*, 410 F.3d 41, 45 (1st Cir. 2005). Second, other courts have focused on the nature of the administrative process and held that failure to raise a timeliness defense in a non-binding agency proceeding cannot result in waiver of that timeliness defense in federal court. *See Cook v. Union Camp Corp.*, No. 95-cv-140-S-D, 1996 WL 407549, at *3 (N.D. Miss. Apr. 4, 1996); *Janowiak v. Corporate City of South Bend*, 576 F. Supp. 1461, 1465 (N.D. Ind. 1983); *see also Liles*, 516 F. Supp. 2d at 314 n.19; *Byrnes v.*

11

*Herion, Inc.*, 757 F. Supp. 648, 653 (W.D. Pa. 1990) (rejecting similar waiver argument in part because EEOC process is not adversarial by nature).

Under either analysis, Cohen's waiver argument fails. The DOC did not conduct its own investigation into Cohen's complaint, but rather responded to Cohen's allegations to the SDHR. Because the DOC took no explicit, binding position on timeliness, it did not waive its right to raise it as a defense. *See Syrkin*, 2005 WL 2387819, at *8. Furthermore, since the SDHR's findings are non-binding in the context of a federal ADA claim, *see, e.g.*, *Fogle v. Monroe Cnty.*, 831 F. Supp. 2d 602, 607 (W.D.N.Y. 2011) (noting that unreviewed SDHR merits determination following hearing did not preclude plaintiff from bringing ADA claim in federal court), the defendants' decision not to raise the defense there does not preclude them from raising it now. *See Cook*, 1996 WL 407549, at *3.

In sum, defendants' failure to raise the timeliness defense before the SDHR does not constitute a waiver of the defense. Cohen makes no showing that defendants should be estopped from asserting this defense now or that he is entitled to equitable tolling. Accordingly, Cohen's ADA claim remains time-barred and is dismissed.[5]

**B. NYSHRL Claim**

New York Executive Law § 297(9) states, in part, that "[a]ny person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of

---

[5] In his opposition, Cohen requests leave to amend his complaint to add a claim for constructive discharge. (Pl.'s Br. at 18–19.) Although leave to amend a pleading "shall be given when justice so requires," Fed. R. Civ. P. 15(a), it is appropriate to deny leave to amend when the proposed amendment is futile. *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Id*. Cohen's proposed amendment is futile for the same reasons that his other disability discrimination claims fail. A claim for constructive discharge accrues when an employee gives his employer "definite notice of [his] intention to retire." *Flaherty v. Metromail Corp.*, 235 F.3d 133, 138–39 (2d Cir. 2000). Here, Cohen gave the DOC definite notice of his intention to retire when he signed the settlement agreement on July 16, 2008. Therefore, his purported constructive discharge claim accrued on that date. Because this date occurred more than 300 days prior to the filing of the SDHR complaint, his claim for constructive discharge would be untimely and subject to dismissal. Accordingly, the proposed amendment is futile and leave to amend is denied.

appropriate jurisdiction . . . unless such person had filed a complaint hereunder or with any local commission on human rights . . . ." N.Y. Exec. Law § 297(9). This election of remedies provision bars a plaintiff who has filed a complaint with the SDHR from bringing a claim in federal court based on the same underlying conduct, unless the SDHR complaint was dismissed for administrative convenience or on timeliness grounds, the election of remedies was annulled, or the complaint was originally filed with the SDHR by the EEOC. *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 225 (S.D.N.Y. 2010); N.Y. Exec. Law § 297(9); *see also York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002) ("Thus, by the terms of the statute and code, respectively, the NYHRL and [New York City Human Rights Law] claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court."); *Shearon v. Comfort Tech Mech. Co., Inc.*, 12-CV-96, 2013 WL 1312008, at *9 (E.D.N.Y. Mar. 28, 2013) ("The election of remedies bar is jurisdictional, such that claims dismissed pursuant to it must be dismissed under Fed. R. Civ. P. 12(b)(1) rather than 12(b)(6)." (citations omitted)).

      Cohen filed his complaint with the SDHR on September 3, 2009. (*See* SHDR Compl., Ex. A.) In his SDHR complaint, he describes the same series of events and makes the same disability discrimination claims as he does in his complaint before this Court. (*See id.*) The SDHR considered the complaint on the merits and concluded that there was no probable cause to believe that defendants engaged in unlawful discrimination. (*See* Ex. B.) There is no indication that any of the exceptions to the election of remedies bar is applicable here. Consequently, to the extent Cohen is bringing a claim under NYSHRL, the election of remedies bar applies and the NYSHRL claim is dismissed for lack of subject matter jurisdiction. *See Jackson*, 709 F. Supp.

13

2d at 225; *Shearon*, 2013 WL 1312008, at *9; *Johnson v. Cnty. of Nassau*, 411 F. Supp. 2d 171, 183–84 (E.D.N.Y. 2006).

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the complaint is granted in its entirety, and plaintiff's complaint is dismissed. The Clerk of Court is respectfully directed to enter judgment accordingly, and close this case.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
       August 5, 2013

_____
ROSLYNN R. MAUSKOPF
United States District Judge